United States District Court
Southern District of Texas

**ENTERED**

March 10, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 4:15-CR-203-1 |
| | § | |
| JOSE MANUEL SALDIVAR-FARIAS | § | |
| | § | |
| | § | |
| | § | |

## ORDER

Before the Court is the Motion of the Defendant Jose Manuel Saldivar-Farias ("Defendant" or "Saldivar") for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 789). In addition to making a request for Compassionate Release, he is also seeking a sentence reduction pursuant to the United States Sentencing Guideline Amendment 821, which is commonly referred to as the Zero Point Offender Adjustment. The United States ("Government") has filed a response in opposition. (Doc. No. 802).

### I.      Procedural Background

Before proceeding to analyze the merits of the motion, the Court needs to recount the facts underlying Saldivar's conviction and the procedural history and circumstances surrounding his guilty plea and sentencing, as they have a bearing upon this Court's ruling. Saldivar pleaded guilty to Count Two of the Third Superseding Indictment which charged him with conspiracy to import from Mexico into the United States 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 963, 952(a), 960(a)(1) and (b)(1). Due to the circumstances involved, he was facing the possibility of a life sentence based upon this charge. No doubt with this possibility in mind, the parties entered into plea negotiations.

He and the Government finally agreed on a 30-year sentence and therefore presented the

Court with a Joint Motion to Waive the Presentence Investigation Report. (Doc. No. 538). The

Court granted that motion. (Doc. No. 552). The Defendant then pleaded guilty to Count Two of

the Third Superseding Indictment pursuant to Rule 11(a)(1)(C), and the Court, in accordance with

the Plea Agreement and the Joint Motion, sentenced Saldivar to the agreed upon 360 months.

Importantly, for purposes of this motion, the Join Motion and the Plea Agreement contained

various agreed-upon facts and conclusions that would aid the Court in determining whether to

follow and adopt the agreed upon sentence. While the Court will try not to belabor the agreed-

upon facts and guideline calculations, it quotes certain portions at some length as they are

somewhat relevant here.

> On the night of March 12, 2015, Perez-Ocampo and Hernandez-Martinez were in the process of importing approximately one ton of marijuana from Nueva Ciudad Guerrero, Tamaulipas, Mexico into the United States across the Falcon Lake by boat. Perez-Ocampo had previously obtained permission from the defendant to do so and had paid him the "piso" or "tax" to transport the marijuana through the area across Falcon Lake. Perez-Ocampo and Hernandez-Martinez were at the Lake's shore preparing to load the marijuana onto boats when they encountered the defendant and Ramirez-Ramirez who were fleeing from the Mexican military who were attempting to capture the defendant. The defendant and Ramirez-Ramirez jumped into Hernandez-Martinez boat and ordered Hernandez-Martinez to take him across to the United States.

> While crossing Falcon Lake, the defendant instructed everyone in the boat to lie about his identity in the event they were apprehended, to deny association with the Zetas, and to tell U.S. authorities that he was "Carlos Cruz-Jimenez." Shortly after crossing Falcon Lake and landing in the United States, Department of Public Safety officers and border patrol agents apprehended the defendant, Ramirez-Ramirez, Hernandez-Martinez and Perez-Ocampo. The defendant identified himself as "Carlos Cruz-Jimenez" and claimed he traveled to the United States to find employment.

> The investigation further revealed that the defendant and his co-conspirators coordinated the importation multi-kilogram loads of marijuana on a monthly basis throughout the period of the charged conspiracy, the total of which exceeded 1,000 kilograms of marijuana. Based on federal law enforcement's seizures of marijuana

in the United States that was imported across Falcon Lake, the total amount of marijuana attributable to the defendant is 42,940 kilograms.

Victim Impact

1. There is no victim of the offense.

Adjustment for Obstruction of Justice

2. The defendant told multiple co-defendants to lie about his identity, his association with the Zetas and to not cooperate with the Government at various times since his arrest. Adjustment for

Acceptance of Responsibility

3. There is no provision for Acceptance of Responsibility in the Plea Agreement. Further, since the defendant is considered to have obstructed justice as envisioned under USSG § 3C1.1, the defendant has not accepted responsibility for his criminal conduct.

Offense Level Calculation

4. **Base Offense Level:** The United States Sentencing Commission Guideline for a violation of 21 U.S.C. 963, 952(a), 960(a)(1) and (b)(1)(G) is found in U.S.S.G. § 2D1.1(a)(5). This guideline instructs that the base offense level is determined by the type and quantity of illicit controlled substance attributable to the relevant conduct findings for this defendant. As identified in The Offense Conduct section above, the defendant is held accountable for 42,940 kilograms of marijuana. Pursuant to U.S.S.G. § 2D1.1(c) (2) the base offense level is established at 36.

36

5. **Specific Offense Characteristic:** The defendant possessed a dangerous weapon, a firearm. Pursuant to USSG § 2D1.1(b)(1) the offense level is increased by 2.

+2

6. The defendant used violence, made a credible threat to use violence, or directed the use of violence. Pursuant to USSG § 2D1.1(b)(2), the offense level is increased by 2.

+2

7. The defendant engaged in witness intimidation or otherwise obstructed justice in connection with the investigation or prosecution of the

3

offense. Pursuant to USSG § 2D1.1(b)(15)(D), the offense level is increased by 2.

+2

8. **Adjustments for Role in the Offense:** Pursuant to U.S.S.G. § 3B1.1(a), the offense level is increased by four, as the defendant is deemed an organizer/leader or criminal activity that involved five or more participants or was otherwise extensive.

+4

9. **Adjustments for use of minor to commit a crime:** Pursuant to U.S.S.G. § 3B1.4, the offense level is increased by two as the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in the avoiding detection of, or apprehension for, the offense.

+2

10. **Adjustments for use of body armor during commission of drug trafficking crime:** Pursuant to U.S.S.G. § 3B1.5, the offense level is increased by four, as the defendant was convicted of a drug trafficking crime and the defendant used body armor during the commission of the offense, in preparation for the offense, or in an attempt to avoid apprehension for the offense.

+4

11. **Chapter Four Enhancements: None**

12. **Total Offense Level:** 52

### PART B: DEFENDANT'S CRIMINAL HISTORY

The defendant does not have any prior convictions.

(Doc. No. 538 at 6–7).

The Court granted the parties' motion to waive the Presentence Investigation Report and in doing so, made the following finding:

That the information contained in the parties' Joint Motion to Waive Presentence Investigation [which includes the information quoted above] is undisputed; that said information contained therein satisfies the requirements of Rule 32(b)(1) and that said information and information otherwise in the record enables this Court to exercise its sentencing authority meaningfully under 18 U.S.C. § 3553.

(Doc. No. 552).

4

The Court sentenced Saldivar to 30 years in custody in accordance with his Rule 11(a)(1)(C) plea agreement. Had the Court sentenced Saldivar following the agreed upon Guideline calculation provided by the parties, he would have had an offense level of 52 with a criminal history category of 1, which under the guidelines would have meant life in prison.

## II.   Analysis

### A.  Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment. — The court may not modify a term of imprisonment once it has been imposed except that—
>
>   (1) in any case—
>
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>       (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Title 28 U.S.C. § 994(t) provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The Fifth Circuit has held that the commentary to U.S.S.G. § 1B1.13 "informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release," although that commentary is "not dispositive" and § 1B1.13 does not bind a court considering a compassionate-release motion. *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021).

In application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)     suffering from a serious physical or medical condition,
(II)    suffering from a serious functional or cognitive impairment, or
(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the

aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The Defendant does not have a terminal illness. While he complains of certain health problems, this Court has reviewed his recent medical records and finds no evidence of any disease or condition that would qualify. He has no major diseases or medical conditions, and he was treated for minor everyday conditions. There are some indications that the doctors ordered him to be tested for Hepatitis B, but there is no indication he actually has it. The Defendant is not 65. He was born in 1987 and is only 38 years old. While he argues his family needs him, he does not claim that his family circumstances qualify under the rule. Overall, he presents no compelling reason to have anyone consider him eligible for Compassionate Release.

### B. Zero Point Offender Adjustment

Saldivar also requests this Court to retroactively apply the Zero Point Offender Adjustment due to the fact that when he pleaded guilty, he had no criminal history points—or at least would have had none had a Presentence Investigation Report been completed. The Government concedes that before his conviction in this case, he had not been convicted of a crime (or at least one that would assess criminal history points), but vehemently contests his right to this reduction.

The trial court's authority to reduce a sentence is derived from Title 18, United States Code, § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to Title 28, United States Code, § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In U.S.S.G. § 1B1.10, the Sentencing Commission has identified the amendments which may be applied retroactively pursuant to this authority and articulated the proper procedure for implementing those amendments. The version of § 1B1.10 applicable to sentence reductions under Amendment 821 was effective on November 1, 2014. Application note 8 (2014) provides: "the court shall use the version of this policy statement that is in effect on the date on which the court reduces the defendant's term of imprisonment as provided by Title 18, United States Code, § 3582(c)(2). Under § 1B1.10:

> In a case in which a defendant is serving a term of imprisonment and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of imprisonment as provided by Title 18, United States Code, § 3583(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

Since Saldivar's claim that he has no relevant criminal convictions is conceded, the first step in the analysis would normally be to determine what the relevant guideline range would have been for the Defendant had the relevant amendment been in place at the time a defendant was actually sentenced. *See* § 1B1.10(b)(1). The Government concedes the range and the lack of criminal history, so this Court need not do that. If that calculation makes a defendant eligible for a reduction, the Court may implement that reduction, but it cannot reduce the sentence below the minimum of the amended guideline. § 1B1.10(b)(2). After that determination is made, the Court can then apply the relevant § 3553(a) factors. The 2023 Amendment to the Guidelines allowed a court to reduce the offense level of a defendant two levels if the defendant scored no criminal

8

history points (and otherwise meets the eligibility requirements). The Government contends that Saldivar does not meet these requirements.

To qualify for the Zero Point Offender Reduction, one must meet all of the following criteria:

§ 4C1.1. Adjustment for Certain Zero-Point Offenders

(a) ADJUSTMENT.—If the defendant meets all of the following criteria:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);

(3) *the defendant did not use violence or credible threats of violence in connection with the offense*;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) *the defendant did not possess*, receive, purchase, transport, transfer, sell, or otherwise dispose of *a firearm or other dangerous weapon* (or induce another participant to do so) *in connection with the offense*;

(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; decrease the offense level determined under Chapters Two and Three by 2 levels.

U.S.S.G. § 4C1.1 (emphasis added).

While he has no criminal history points, in the joint factual statement filed with this Court and quoted above, Saldivar agreed that firearms were used in connection with the offense and that violence or credible threats of violence were also used in connection with the offense. Therefore, Saldivar does not meet all of the criteria and consequently does not qualify for the Zero Point Offender Adjustment.

## III.    Conclusion

The Court **DENIES** Saldivar's request for Compassionate Release, and it also **DENIES** any reduction in sentence based upon the fact that he would have had no criminal history points attributable to him had a formal presentence investigation report been performed.

Signed on this the ____9ᵗʰ____ day of March, 2026.

Andrew S. Hanen
United States District Judge